UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

PAUL ANDREW DESHONE,

        Plaintiff,                    Case No. 2:21-cv-152

v.                                       Honorable Paul L. Maloney

UNKNOWN BIGGER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Defendants Bernhardt, Reed, Baker, Quinn, Smart, Casey, Paquin, Forrest, Hill, Checko, McDoyall, Wonnacott, Murmi, Stranely, and Burke will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourth, Fifth, and Fourteenth Amendment claims. Plaintiff's Eighth Amendment excessive force claim against Defendants Bigger, Bender,

and Unknown Party remains in the case. Plaintiff's motion to appoint counsel (ECF No. 4) will be denied.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Captains Unknown Bigger and Unknown Burke; Sergeant Unknown Bernhardt; Prison Counselor Unknown Wonnacott; Corrections Officers Unknown Reed, Unknown Baker, Unknown Bender, Unknown Quinn, Unknown Smart, Unknown Casey, Unknown Paquin, Unknown Forrest, and Unknown Parties; and Registered Nurses Unknown Checko, Unknown McDoyall, Unknown Murmi, and R. Stranely.

Plaintiff alleges that on May 2, 2021, Defendants Bigger, Bender, and Unknown Party, as well as other individuals, responded to the Steamboat Unit at URF because Plaintiff and other inmates had their arms in the food slots of their cell doors.[1] (ECF No. 1, PageID.6.) Plaintiff contends that he and the other inmates were protesting the fact that "the lunch meal was shorted." (*Id.*) He avers that this was "peaceful and was not in any way a threat to staff or security of the prison." (*Id.*) According to Plaintiff, Defendants Bigger, Bender, and Unknown Party, and the other individuals, used a taser on him five times. (*Id.*) Defendant Unknown Party then grabbed,

---

[1] This practice is commonly known as taking one's food slot hostage. An inmate takes his food slot "hostage" by preventing it from being closed, typically by placing his hand or arm in the slot. *See, e.g., Earby v. Ray*, 47 F. App'x. 744, 745 (6th Cir. 2002). It is against prison rules and a common form of prisoner misbehavior. *Annabel v. Armstrong*, No. 1:09-cv-796, 2011 WL 3878379, at *4 n.5 (W.D. Mich. Mar. 30, 2011), *report and recommendation adopted* 2011 WL 3878385 (W.D. Mich. Aug. 31, 2011).

2

twisted, pulled, and bent Plaintiff's arm. (*Id.*) Plaintiff alleges that he suffered a shoulder injury, as well as "a cut, and burns." (*Id.*) Plaintiff alleges that he was not provided any type of medical treatment after the use of force. (*Id.*) His shoulder "still hurt[s]", and he claims that the cut "has just now healed and it is going on 2 months." (*Id.*)

Plaintiff claims that all Defendants "are staff that after the fact [he] requested medical treatment" from. (*Id.*) On May 2, 2021, Plaintiff asked Defendant Reed for medical treatment. (*Id.*) Defendant Bernhardt "reviewed [Plaintiff] on a misconduct." (*Id.*) Plaintiff asked for medical treatment and was told to "lay down and not to put [his] arm in [the] food slot." (*Id.*) When Defendant Baker made rounds, Plaintiff asked for health care and was "told [he] was a retard." (*Id.*) Defendant Quinn worked second shift and told Plaintiff to "wait for med line." (*Id.*) Defendant Checko told Plaintiff to "fill out [a] healthcare kite" when he told her that it was an emergency while she was passing out medication. (*Id.*) Defendant Paquin told Plaintiff to wait for the nurse. (*Id.*)

Defendant Stranely denied Plaintiff care when she was passing out medication at 5:00 a.m. (*Id.*) Defendant Reed worked first shift on May 3, 2021, and told Plaintiff to wait for the nurse to make rounds. (*Id.*, PageID.7.) When Defendant Baker made rounds, Plaintiff went to his cell door to attempt to ask for health care. (*Id.*) Before he could even ask, Defendant Baker told Plaintiff to "stop being a lil' bitch" and that he was not "getting healthcare out here." (*Id.*) Defendant Murmi took Plaintiff's kite during 10:00 a.m. medication rounds and told Plaintiff "to not work out or strain [his] shoulder any more than normal and that [Plaintiff] would be called out." (*Id.*) Plaintiff also asked Defendants Quinn, Smart, and Casey for health care. (*Id.*) During the 6:00 p.m. medication line, Defendant Hill told Plaintiff that "there was nothing she could do.

3

[Plaintiff] just had to kite [which he already did]." (*Id.*) During third shift, Plaintiff asked Defendants Forrest and Paquin for medical "to no avail." (*Id.*)

Plaintiff alleges that on May 4, 2021, "it was the same thing all over again." (*Id.*) Defendant McDoyall "made a round and told [Plaintiff] that if [he was] not bleeding then [he was] ok." (*Id.*) Plaintiff claims, however, that he was bleeding from a "big gash" in his arm. (*Id.*) Defendant Wonnacott made "legal rounds" and Plaintiff asked if "he could help [him] get to medical." (*Id.*) Defendant Wonnacott told Plaintiff that was "above his pay scale." (*Id.*) Plaintiff avers that his pain was "a 10" and that he was refused Tylenol or any treatment. (*Id.*)

On May 5, 2021, Plaintiff was called to medical for another matter. (*Id.*) He told the nurse about the injury to his arm and that he was unable to lift it. (*Id.*) Plaintiff was ordered to go for X-rays the following day. (*Id.*) On May 7, 2021, Defendant McDoyall called Plaintiff out to ask about his injury. (*Id.*) Plaintiff told Defendant McDoyall that X-rays had been taken on May 6, 2021. (*Id.*) He was told that the prison would not do an MRI "so if nothing [came] up on [an] X-ray that is it." (*Id.*) Plaintiff was sent back to his cell with "over the counter meds for pain" for three days. (*Id.*) He avers that this issue is still ongoing and that he has been told "there will not be any more treatment." (*Id.*, PageID.8.)

On May 14, 2021, Defendant Burke came to interview Plaintiff regarding the grievance he submitted about the events set forth above. (*Id.*) According to Plaintiff, Defendant Burke stated that "medical treatment was offered but that is clearly fabrication." (*Id.*) Plaintiff faults Defendant Burke for "cover[ing] up staff corruption." (*Id.*)

Based on the foregoing, Plaintiff alleges violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.8–9.) Plaintiff seeks damages, as well as court costs, filing fees, and future medical treatment. (*Id.*, PageID.9–10.)

4

## II. Pending Motion

Plaintiff has filed a motion to appoint counsel, alleging that he is "[ignorant] of the law" and that Defendants' "counsel may try to overwhelm [him] in the court process." (ECF No. 4, PageID.35.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 4) will, therefore, be denied.

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

5

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Fourth Amendment Claims**

Plaintiff vaguely suggests that Defendants violated his Fourth Amendment rights "by the way this whole situation was handled." (ECF No. 1, PageID.9.) The Fourth Amendment prohibits, *inter alia*, "unreasonable searches and seizures." U.S. Const. amend. IV. As an initial matter, nothing in the complaint suggests that Plaintiff was subject to a search and seizure. In any event, the Supreme Court has noted that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their

6

cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527–28 (1984). Plaintiff, therefore, has not set forth a cognizable Fourth Amendment claim, and such claims will be dismissed.

### B. Fifth Amendment Claims

Plaintiff suggests that Defendant Burke violated his Fifth Amendment due process rights "by being deceitful in [the] step one grievance response." (ECF No. 1, PageID.9.) He also asserts that Defendant Bigger violated his Fifth Amendment rights. (*Id.*) The Fifth Amendment, however, only applies to claims against federal employees. Here, Plaintiff has sued employees of the State of Michigan. Plaintiff, therefore, cannot maintain his Fifth Amendment claims. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government"). His Fifth Amendment claims will, therefore, be dismissed.

### C. Eighth Amendment Claims

#### 1. Excessive Force

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "'evolving standards of decency.'" *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "'involve the unnecessary and wanton infliction of pain.'" *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "'totally without penological justification.'" *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)), *quoted in Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the

8

amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Here, Plaintiff maintains that on May 2, 2021, he was peacefully protesting the lunch meal being short by sticking his arms out of the food slot on his cell door. (ECF No. 1, PageID.6.) Plaintiff avers that Defendants Bigger, Bender, and Unknown Party, as well as other individuals, came to his cell and tased him five times. (*Id.*) Defendant Unknown Party "then grabbed [his] arm" and twisted, pulled, and bent it, causing him to suffer a shoulder injury as well as cuts and burns. (*Id.*) From these allegations, the Court concludes that Plaintiff has sufficiently stated an Eighth Amendment excessive force claim against Defendants Bigger, Bender, and Unknown Party at this time.

### 2. Denial of Medical Care

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how

evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

11

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff maintains that Defendants Bernhardt, Reed, Baker, Quinn, Smart, Casey, Paquin, Forrest, Hill, Checko, McDoyall, Wonnacott, Murmi, and Stranely violated his Eighth Amendment rights by "refus[ing him] medical treatment [for an] emergency for over 2 days." (ECF No. 1, PageID.8.) Plaintiff's allegations regarding these Defendants' involvement, however, are scant. Plaintiff avers that he suffered a shoulder injury, a cut, and burns. (*Id.*, PageID.6.) However, he fails to provide any allegations from which the Court could conclude that these conditions were so obvious to the named Defendants that Plaintiff had a serious need for medical treatment. Rather, Plaintiff asserts that he asked for medical care but does not aver that he described his symptoms to these Defendants. (*Id.*, PageID.6–7.) He vaguely contends that Defendant McDoyall told him that he was ok if he was not bleeding, but that he was bleeding from a "big gash" in his arm. (*Id.*, PageID.7.) Nothing from the complaint, however, suggests that the gash was visible to Defendant McDoyall when she made rounds. Plaintiff's allegations are not sufficient to support an inference that he presented a serious medical need to Defendants for treatment.

Even if Plaintiff's conditions were serious medical needs, such that Plaintiff adequately alleged the objective component, his allegations fall short with regard to the subjective component. With respect to many of the Defendants, Plaintiff states only that they refused to provide health care. (*Id.*, PageID. 6–7.) Moreover, the complaint suggests that Defendant Murmi advised Plaintiff to "not work out or strain [his] shoulder any more than normal and that [he] would be called out." (*Id.*, PageID.7.) Plaintiff received medical care on May 5, 2021, three days after the use of force occurred. (*Id.*) He received X-rays on May 6, 2021. (*Id.*) On May 7, 2021,

Plaintiff was given over the counter medication for pain. (*Id.*) Plaintiff's allegations simply fail to rise to the level of deliberate indifference. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. At most, Plaintiff has alleged negligence, which *Farmer* has held is not enough for an Eighth Amendment claim.

Additionally, where a healthcare provider has determined that treatment is not necessary, the other officers' decisions to not call for healthcare assistance does not necessarily evidence deliberate indifference. Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell*, 867 F.2d at 959).

For all of these reasons, therefore, Plaintiff has failed to state a claim for deliberate indifference to a serious medical need and such claims will be dismissed.

### 3. Verbal Harassment

A liberal reading of the complaint leads the Court to conclude that Plaintiff may be asserting an Eighth Amendment violation against Defendant Baker for verbal harassment. As noted *supra*, Plaintiff claims that when he asked Defendant Baker for health care on May 2, 2021,

he was "told [he] was a retard."  (ECF No. 1, PageID.6.)  He alleges further that Defendant Baker called him a "lil bitch" on May 3, 2021.  (*Id.*, PageID.7.)

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").  Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Baker arising from his alleged verbal abuse.

**D.    Fourteenth Amendment Claims**

Plaintiff also avers that Defendant Burke violated his Fourteenth Amendment due process rights by "being deceitful in [his] step one grievance response."  (ECF No. 1, PageID.9.)  The courts, however, repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467

(1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Burke's conduct did not deprive him of due process.

Moreover, the Sixth Circuit has held that where a defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Also, in unpublished decisions, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (no constitutional right to a grievance procedure). Plaintiff's allegation that Defendant Burke improperly responded to his step one grievance fails to state a claim of constitutional dimension. Plaintiff's Fourteenth Amendment claim will, therefore, be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bernhardt, Reed, Baker, Quinn, Smart, Casey, Paquin, Forrest,

Hill, Checko, McDoyall, Wonnacott, Murmi, Stranely, and Burke will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's Fourth, Fifth, and Fourteenth Amendment claims.  Plaintiff's Eighth Amendment excessive force claim against Defendants Bigger, Bender, and Unknown Party remains in the case.

  An order consistent with this opinion will be entered.


Dated: February 3, 2022      /s/ Paul L. Maloney
                 Paul L. Maloney
                 United States District Judge